IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-463-FL

|  |  |  |
|---|---|---|
| MICHAEL E. FIELDS, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-30, DE-36] pursuant to Fed. R. Civ. P. 12(c). Claimant Michael E. Fields ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on 15 March 2006, alleging disability beginning 31 January 2004. (R. 37). Both claims were denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on 17 February 2009, at which Claimant was represented by counsel and a medical expert ("ME") and a

vocational expert ("VE") appeared and testified. (R. 7-29). On 17 April 2009, the ALJ issued a decision denying Claimant's request for benefits. (R. 34-51). On 24 September 2010, the Appeals Council denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2), 416.920a(e)(2).

In this case, Claimant alleges the following errors by the Appeals Council: (1) failure to give proper weight to a treating physician's medical opinion; and (2) improper consideration of new and material evidence. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 1, 15, 20. Claimant

3

also alleges the following errors by the ALJ: (1) failure to classify Claimant's mental impairment as "severe" and to make a severity finding as to all of Claimant's impairments; (2) improper reliance on the ME's opinion in determining whether Claimant met Listing 1.04; and (3) improper RFC assessment. *Id.* at 23, 25, 28

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 39). Next, the ALJ determined Claimant had the following severe impairments: "cervical spine degenerative disc disease ["DDD"] with two surgeries and sleep problems." *Id.* The ALJ also found Claimant's mental impairment was nonsevere. (R. 40). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in his activities of daily living, social functioning and concentration, persistence and pace with no episodes of decompensation. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work,[1] that allowed for sitting for two hours in an eight hour work day "with

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

4

the ability to shift position every 30 minutes," understand, remember and carry out simple instructions, respond appropriately to supervision and coworkers and to deal with changes in a routine work setting in a low production environment. (R. 40). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 44). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work. (R. 45). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 45).

## II.    Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 47 years old and unemployed. (R. 12, 24). Claimant testified that he last worked in 2004 installing siding on modular homes, where he suffered a work-related injury giving rise to his present claim. (R. 19-20). Claimant applied for worker's compensation but his claim was denied. (R. 20).

Since 2004, Claimant has suffered from chronic neck pain. (R. 21). Claimant testified to also suffering from lower back pain, leg pain and numbness in his legs. (R. 22). Claimant has undergone two operations to treat his neck pain. (R. 19). Claimant testified that he continues to experience neck pain despite his second operation in October 2008 and, in fact, feels worse. (R. 17, 19). Claimant takes Percocet for pain and other medications to help him sleep. (R. 20).

Regarding functional limitations, Claimant testified that he lifts "[n]o more than [he] ha[s] to," he "can[not] walk very far without stopping" because his legs tend to give out and he can sit for

---

If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

only fifteen to thirty minutes before he must change position. (R. 21). As for daily activities, Claimant stated that he reads the Bible, watches television, does "no more than get up and take a bath, stuff like that," and drives "sometimes." (R. 17-18).

## III. Medical Expert's Testimony at the Administrative Hearing

Dr. Cannon testified as a ME at the administrative hearing. (R. 14-17). The ME testified that based on his experience, training and review of the record, Claimant's medically determinable impairments included cervical herniated disc, and "a mood disorder, secondary to chronic pain and an anxiety disorder." (R. 14). The ME testified further that Claimant was "discharged from mental health" on 12 March 2008 for depression. *Id.* The ME testified that Claimant's medical impairments do not, individually or in combination, meet or equal any of the Commissioner's listings. (R. 15). Regarding Claimant's functional limitations, the ME testified that Claimant could perform light work allowing for a sit/stand option and requiring simple, routine, repetitive tasks. (R. 16). The ME explained that this testimony was based on medical evidence through 3 December 2008 and that with the exception of the December 2008 record, he did not have any information on Claimant's condition subsequent to Claimant's second neck surgery in October 2008. (R. 16).

## IV. Vocational Expert's Testimony at the Administrative Hearing

Julia Sawyer-Little testified as a VE at the administrative hearing. (R. 23-27). After the VE's testimony regarding Claimant's past work experience (R. 24), the ALJ posed three hypotheticals. First, the ALJ asked whether an individual the same age and with the same education and work experience as Claimant who could perform medium work, stand, sit or walk for up to six hours at a time with normal breaks, understand and carry out simple instructions, concentrate and persist for up to two hours at a time in a work setting with low production demands but should avoid exposure

to environmental contaminates could perform Claimant's past relevant work. (R. 25-26). The VE

responded in the negative but testified that the hypothetical individual could perform other jobs such

as parking lot attendant (DOT # 915.473-010), photocopy machine operator (DOT #207.685-014)

and office helper (DOT #239.567-010). (R. 26). Second, the ALJ asked if the above jobs would be

precluded if the hypothetical individual needed to change position every ten to fifteen minutes. *Id.*

The VE testified that this additional limitation would preclude competitive employment. (R. 26-27).

## DISCUSSION

### I. The additional evidence submitted to the Appeals Council is not material.

Claimant contends the Appeals Council made reversible error when it incorporated new

evidence into the record but failed to "properly consider this new evidence." Pl.'s Mem. at 15.

At the outset, the court dispenses with Claimant's argument that the Appeals Council is

required to making specific findings concerning new evidence. *See* Pl.'s Mem. at 19 (faulting the

Appeals Council for failing "to sufficiently explain the weight, if any, it accorded the medical

opinion of" a treating physician) (emphasis in original). This court considered and rejected an

identical argument posited by the claimant in *King v. Barnhart*, 415 F. Supp. 2d 607 (E.D.N.C.

2005). In *King*, the court explained "a *per se* rule that remand is necessary in all cases where the

Appeals Council admits new evidence without a detailed assessment . . . is not supported [by] either

[] 20 C.F.R. § 404.970 or [] Fourth Circuit precedent." *Id.* at 611 n.1. Rather, the court held that

where new evidence is submitted to the Appeals Council and the Appeals Council does not make

an independent evaluation, the proper course is to simply evaluate the record as a whole, including

the new evidence, to determine whether there is substantial evidence to support the administrative

decision. *Id.* at 610, 612; *see also Alexander v. Astrue*, No. 5:09-CV-432-FL, 2010 U.S. Dist. LEXIS

7

118039, at *13-15, 2010 WL 4668343, at *4-5 (E.D.N.C. July 19, 2010) (same).

The Appeals Council incorporated the following additional evidence into the record: (1) Cervical Spine RFC Questionnaire from Kenneth O. Price, M.D., of Regional Neurosurgery, dated 19 May 2009 (R. 332-37); (2) medical records from Dr. Price, dated 28 April 2009 through 19 June 2009, and records referred to therein, including an EMG-Nerve Conduction Study and a x-ray of Claimant's cervical spine (R. 339-49, 355); (3) medical records from Carl L. Smith of Maria Parham Pain & Physical Medicine Clinic (R. 350-54); and (4) medical records from Triangle Orthopaedic Associates, dated 15 October 2009 through 23 October 2009 (R. 358-65). (R. 4). Although the Appeals Council discounted the additional evidence (R. 1-2), the court must review this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y, Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (explaining where the Appeals Council incorporates additional evidence into the administrative record, the reviewing court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [ALJ's] findings"). However, at this stage, Claimant bears the burden of demonstrating that the additional evidence is (1) new, i.e., not duplicative or cumulative of that which is already in the record, (2) material, i.e., would have changed the outcome of the ALJ's decision; and (3) relates to the claimant's medical condition as it existed at the time of the hearing. 20 C.F.R. § 404.970(b); *see Wilkins*, 953 F.2d at 96 (citations omitted); *see also Eason v. Astrue*, No. 2:07-CV-30-FL, 2008 U.S. Dist. LEXIS 66820, at *8, 2008 WL 4108084, at *3 (E.D.N.C. Aug. 29, 2008) (citing *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)). In this case, the relevant time period extends from 31 January 2004 (Claimant's alleged disability onset date) to 17 April 2009 (the date of the ALJ's decision).

8

A.   Dr. Price's Treatment Records and Cervical Spine RFC Questionnaire

Claimant faults the Appeals Council for not according "controlling weight" to Dr. Price's RFC opinion and argues further that the opinion is material evidence as it "addresses the severity and nature of [Claimant's] medical conditions from December 2007 through May 2009." Pl.'s Mem. at 16, 19.

As an initial matter, Claimant's contention that Dr. Price's medical opinion was automatically entitled to controlling weight based on his treating physician status is incorrect. *See* Pl.'s Mem. at 16. The ALJ must generally give more weight to the opinion of a treating physician because that doctor is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted); *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

9

The court now turns to the evaluation of the treatment records and questionnaire completed by Dr. Price. The treatment records, dated 28 April 2009 through 19 June 2009, chronicle Claimant's complaints of neck pain and numbness in his left and right hands and indicate Claimant underwent right carpal tunnel release on 8 June 2009. (R. 342-55) A physical examination on 28 April 2009 revealed a myelopathic gait, "brisk" reflexes in the lower extremities and a 5/5 motor exam at all four extremities and a physical examination on 19 May 2009 remain unchanged. (R. 342). X-rays of the cervical spine taken in May 2009 showed good placement of the bone graft and instrumentation at C3-4, early "though not complete" fusion and probable nonunion at C6-7 without any malalignment. (R. 341). In the 19 May 2009 treatment note, Dr. Price indicated that further neck surgery would not improve Claimant's symptoms. *Id.*

With the exception of the right carpal tunnel release, the court finds the records from Dr. Price add nothing new to the record that was before the ALJ and are merely cumulative of Dr. Price's treatment records from December 2007 through January 2009, which were considered at length by the ALJ. In particular, the records before the ALJ also indicate (1) good motor strength in the bilateral upper and lower extremities, "brisk" reflexes in the lower extremities, and some difficulty with his gait (R. 43-44, 204, 208, 309-10) and (2) "good alignment and placement of instrumentation" but incomplete fusion. (R. 309). As for Dr. Price's post-ALJ decision treatment records regarding Claimant's carpal tunnel release, the records provide no information as to how Claimant's symptoms affected his work-related abilities during the relevant time. In fact, these records provide no information whatsoever regarding Claimant's functional limitations. Accordingly, Dr. Price's treatment records regarding Claimant's carpal tunnel release are immaterial.

In the form opinion, Dr. Price indicated that as a result of Claimant's physical condition,

impacted in part by anxiety, Claimant is limited to performing sedentary work in a low stress environment that accommodates a sit/stand option and can sit, stand and walk for only thirty minutes at a time. (R. 334-35). Identical limitations found by Dr. Price and the ALJ include the sit/stand option and the ability to perform in a low stress or low production environment. (R. 40, 334-35). Dr. Price found Claimant's impairments required greater standing, walking and lifting limitations than those found by the ALJ while the ALJ found Claimant required a more restrictive sitting limitation than that found by Dr. Price. (R. 40, 334-35). Nevertheless, the court finds Dr. Price's opinion would not change the ALJ's opinion as the more restrictive limitations imposed by Dr. Price are not supported by Dr. Price's treatment records during the relevant time period nor those post-dating the ALJ's decision. Accordingly, the form opinion is not material.

B.    Dr. Smith's Treatment Records

Treatment records by Dr. Smith dated 17 April 2009 and 16 June 2009 indicate follow-up visits regarding chronic neck and low back pain. The April 2009 physical examination is limited to noting that Claimant suffered from no spasms, experienced tenderness over his neck and a reduced range of motion (R. 351), while the June 2009 examination results indicate only that Claimant's sensation in his right hand was intact, his muscle strength was 5/5 and his reflexes were symmetric in the biceps and triceps. The court finds these records immaterial as they do not indicate reliance on evidence during the relevant time period. Moreover, these records are cumulative as the physical examinations indicate similar findings as those mentioned in treatment records submitted to and considered by the ALJ. (R. 42, 166, 204,208, 279, 288, 300).

C.    Medical records from Triangle Orthopaedic Associates, P.A.

On 15 October 2009, Claimant visited Triangle Orthopaedic Associates, P.A. for evaluation

of his chronic pain syndrome and was seen again on 23 October 2009 for neck pain. (R. 358, 362).

Upon examination on October 15th, it was noted that Claimant had "pretty good" neck motion, "good" shoulder, elbow, wrist, hip, knee and ankle motion, "good" strength at all levels and a "little bit" of antalgic type gait. (R. 362). Upon examination on October 23rd, it was noted that Claimant's neck range of motion was "actively and passively [] limited in all planes," however, manual muscle testing revealed no focal weakness, full muscle bulk, normal tone and intact sensation. (R. 359). It was noted further that Claimant had well-healed scars of both wrists from carpal tunnel surgery and limited but symmetric reflexes in his arms. *Id.* Diagnoses included chronic neck pain and "status post neck surgery times two with nonunion at C4-5 and C6-7 with one or two screws broken at C3." *Id.* The court finds these records immaterial as they document similar findings upon examination as those considered by the ALJ. Moreover, these records are immaterial for the additional reason that they relate to a time more than six months after the ALJ's decision and no information is contained within these records relating the findings therein to Claimant's condition during the relevant time period. *See Edwards v. Astrue*, No. 7:07-CV-48, 2008 U.S. Dist. LEXIS 13625, at *25, 2008 WL 474128, at *9 (W.D. Va. Feb. 20, 2008) ("The [additional records] do not relate back to the relevant time period as they were...[completed] over 6 months after the ALJ rendered his decision.").

In discussing these records, Claimant notes his reports of worsening symptoms, including increasing neck pain, difficulty twisting, looking up or down, pushing, pulling and lifting and his dependence on others when dressing, bathing, walking and using the restroom. Pl.'s Mem. at 21; (R. 358). However, if Claimant believes he is now disabled based on deterioration subsequent to the ALJ's decision, "[Claimant's] remedy is to file a new application." *Adams v. Barnhart*, No. 1:05-CV-

12

291, 2006 U.S. Dist. LEXIS 96822, at *26, 2006 WL 6142859, at *9 (W.D.N.C. Aug. 22, 2006) (quoting *Bowles v. Barnhart*, 392 F. Supp. 2d 738, 745-46 (W.D.Va. 2005)); *see also Wilmer v. Astrue*, No. 6:07-CV-2, 2008 U.S. Dist. LEXIS 1664, at *16-17, 2008 WL 112045, at *6 (W.D. Va. Jan. 8, 2008) (stating if claimant "is of the view that he is now disabled based on deterioration after the ALJ's . . . decision . . . , his remedy is to file a new application under the regulations applicable for such applications") (citing 20 C.F.R. §§ 404.620(a)(2), 416.330(b)).

**II.     The ALJ's failure to make an express determination as to the severity of a particular impairment and to classify various impairments as severe is not reversible error.**

Claimant contends the ALJ committed two errors in the second step of the sequential evaluation process. Pl.'s Mem. at 25. First, Claimant contends the ALJ erroneously characterized Claimant's depression and anxiety as non-severe impairments. *Id.* at 25-26. Second, Claimant contends the ALJ committed reversible error in failing to classify Claimant's below average intellectual functioning, carpal tunnel syndrome and lower back pain as medically determinable impairments. *Id.* at 27-28.

The issue, however, is not whether the ALJ, upon making a severity finding as to certain impairments, failed to make an express determination as to other impairments or improperly characterized the severity of other impairments. Rather, the court's concern is whether the allegedly ignored or mischaracterized impairments at step two of the sequential evaluation process are considered in subsequent steps. *See Tarpley v. Astrue*, No. 5:08-CV-271-FL, 2009 U.S. Dist. LEXIS 45685, at *5-6, 2009 WL 1649774, at *2 (E.D.N.C. June 1, 2009) (finding no reversible error "where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation, provided the ALJ considers that impairment in subsequent steps"). That said, the ALJ has no duty

to consider an impairment absent an allegation by the claimant of such impairment and record evidence of a resultant limitation or restriction. *See* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *8, 1996 WL 374184, at *3 (July 2, 1996) ("[W]hen there is no allegation of a . . . limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."); *see also Humphrey v. Barnhart*, No. 1:02cv32-T, 2002 U.S. Dist. LEXIS 16659, at *7, 2002 WL 31129679, *3 (W.D.N.C. Aug. 29, 2002) ("The ALJ is obligated to consider only those limitations or restrictions which are alleged and/or based upon relevant evidence.").

Here, the ALJ specifically found Claimant satisfied the severity requirement at step two of the process by finding that he had two "severe" impairments – cervical spine DDD with two surgeries and sleep problems. (R. 39). The ALJ then discussed and evaluated evidence concerning Claimant's mental impairments, lower back, shoulder, neck and right arm pain, right hand numbness and tingling and sleep difficulties. For the reasons discussed below, the court finds the ALJ's subsequent RFC analysis incorporated the relevant, demonstrable limitations on the basis of that evidence.

As for Claimant's alleged impairment of "below average intellectual functioning," the court notes that Claimant did not list this condition as an impairment in his application for benefits.[2] Moreover, Claimant did not testify to this condition during the administrative hearing and his testimony provides no insight as to how this condition may impact his ability to work. The court

---

[2]  Pursuant to the Notice of Disapproved Claims, Notice of Reconsideration by the SSA and Claimant's Disability Report, Claimant attributed his alleged disability to "nerves, 2nd and 3rd vertebrae in neck, hand cramps, pain." (R. 53, 60, 95-96).

notes further the lack of evidence in the record indicating that this condition in fact affects Claimant's ability to work and Claimant cites none. Rather, Claimant relies solely on the diagnosis of "[l]ow average intelligence" by state agency examining consultant Anthony G. Carraway, M.D. *See* Pl.'s Mem. at 27 (noting *inter alia* Dr. Carraway's comment that Claimant "[a]ppears to be somewhat low average to below average," has an eleventh grade education, failed fifth grade, reported 52 states in the United States and claimed Raleigh was the capital of the United States); (R. 171-72).

However, the diagnosis of a condition is not enough to prove disability; "[t]here must be a showing of related functional loss." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (explaining "[t]he mere diagnosis . . . says nothing about the severity of the condition"). Here, Claimant has failed to carry his burden in showing an inability to perform substantial gainful activity as a result of low intellectual functioning. *See* 20 C.F.R. § 1512(a) ("[The claimant] must furnish medical and other evidence that we can use to reach conclusions about [the claimant's] medical impairment(s) and . . . its effect on [the claimant's] ability to work on a sustained basis."); *Aytch v. Astrue*, 686 F. Supp. 2d 590, 599 (E.D.N.C. 2010) ("[W]hen an applicant for social security benefits is represented by counsel the [ALJ] is entitled to assume that the applicant is making his strongest case for benefits.") (quoting *Johnson v. Chater*, 969 F. Supp. 493, 509 (N.D. Ill. 1997)). The record contains no opinion by a treating or examining physician as to Claimant's functional limitations as a result of Claimant's low intellectual functioning. Indeed, in assessing Claimant's functional abilities, Dr. Carraway noted Claimant's attention and concentration, ability to understand, retain and follow instructions and stress tolerance were "minimally impaired" and that Claimant's ability to perform simple repetitive tasks and to persist at those tasks would be more limited by his physical complaints. (R. 172-73). Nevertheless, the court

15

observes that Dr. Carraway's mental assessment (which the court acknowledges was not discussed in the ALJ's decision) is in accord with the ALJ's mental RFC finding which limits Claimant to simple work in a low production environment. (R. 40). Accordingly, Dr. Carraway's assessment does not have a negative impact on the ALJ's analysis as Claimant suggests.

**III.    The ALJ did not err in relying on the ME's opinion in concluding Claimant did not meet Listing 1.04.**

Claimant contends the ALJ erroneously relied on the testimony of Dr. Cannon, the ME, to conclude that Claimant did not meet or medically equal Listing 1.04 (disorders of the spine).[3] Pl.'s Mem. at 25.

To be disabled under the listings, the claimant may present evidence either that the impairment meets or is "medically equivalent" to a listed impairment. *See Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir.1986); *see also* 20 C.F.R. §§ 404.1526, 416.926. "For a claimant to qualify for benefits by showing that his . . . combination of impairments is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original). "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." S.S.R. 96-6p, 1996 SSR LEXIS 3, at *7-8, 1996 WL 374180, at *3. In order to determine whether a medical

---

[3] Claimant's step three argument (raised in his step-two discussion) also includes the contention that the ALJ erred in not ordering an IQ test which "may reveal" that Claimant meets Listing 12.05C, the listing for mental retardation. Claimant however has not briefed this issue or presented it to the court with any supporting discussion or authority. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) ("For a claimant to qualify for benefits by showing that his . . . combination of impairments is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (emphasis in original). Claimant is deemed therefore to have abandoned argument on this issue. *See e.g., Newton v. Astrue*, 559 F. Supp. 2d 662, 670-71 (E.D.N.C. 2008) (citations omitted); *March v. Comm'r of SSA*, 559 F. Supp. 2d 722, 730 n.5 (N.D. Tex. 2008).

impairment equals a listing, the ALJ is bound to "consider all evidence in [claimant's] case record about [the] impairment(s) and its effects on [claimant] that is relevant to this finding .... [The ALJ] also consider[s] the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. §§ 404.1526(c), 416.926(c).

Listing 1.04 refers generally to disorders of the spine, such as spinal stenosis, osteoarthritis and degenerative disc disease, resulting in the compromise of a nerve root or the spinal cord. *See* C.F.R. § 404, Subpt. P., App. 1, § 1.04. The ALJ specifically considered Listing 1.04 and based on testimony by the ME as well as the "clinical record," the ALJ found Claimant did not have an impairment that met or equaled that listing. (R. 40). Claimant contends, however, that the ALJ's step-three finding was in error because (1) the ME's opinion was not based on review of the entire record, and in particular, the new evidence submitted to the Appeals Council; and (2) the ME relied solely on a 2004 MRI while ignoring the following records: (i) a November 2007 MRI of the lumbar spine which revealed a "small central and slight L4-5 disc protrusion" (R. 279); (ii) a 19 December 2007 MRI of the cervical spine indicating multilevel cervical spine degenerative disc disease with result mild cord compression and varying severity of foraminal encroachment at multiple levels (R. 225); and (iii) a 2 October 2008 MRI of the cervical spine indicating mild central stenosis and cord flattening, progression of increased T2 signal within the cervical spine cord predominantly at and above the level of C4 suggesting cord edema related to compression and degenerative foraminal stenosis predominantly on the right at C2-3 and on the left at C4-5 (R. 215). Pl.'s Mem. at 31.

At the outset, the court dispenses with Claimant's argument concerning the new evidence presented to the Appeals Council. As the court explained above, that evidence is not material. Next, the court observes that Claimant discusses none of the requirements for Listing 1.04 and in fact, has

17

not identified under which subsection (Listing 1.04A, B or C) his impairment allegedly falls. Rather, Claimant simply cites three MRIs without further discussion. In the ALJ's RFC assessment, however, she thoroughly summarized Claimant's history of neck and lower back pain, diagnoses and treatment he received, including the MRIs that Claimant relies on in support of his Listing 1.04 argument. (R. 43). The ALJ also cited treatment records post-dating Claimant's 2008 surgery and in particular, records from December 2008, January 2009 and February 2009. (R. 43-44). While Claimant notes correctly that the ME testified only as to a 2004 MRI in response to questioning by the ALJ, the ME acknowledged also Claimant's January and October 2008 surgeries and a 3 December 2008 treatment note. (R. 16). Based on this evidence, the ME concluded that there was no 12 month period of time where Claimant met or equaled any of the listings.

To satisfy Listing 1.04, Claimant must show a disorder of the spine "(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" with one of the following:

A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

OR

B.   Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

OR

18

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § 404, Subpart P, App. 1, 1.04. With regard to Listing 1.04A, the medical record includes evidence of mild cord compression and a restricted range of motion in the cervical spine (R. 43, 204, 215). However, the medical records do not demonstrate motor loss. In fact, treatment records indicated Claimant consistently exhibited good motor strength in the bilateral upper and lower extremities. (R. 166, 204, 211, 309). Furthermore, while Claimant also complained of lower back pain, positive straight leg raising tests were negative. (R. 272, 279, 282). Therefore, Claimant has failed to satisfy all the requirements of Listing 1.04A. Listing 1.04B is inapplicable as Claimant does not have a diagnosis of spinal arachnoiditis. Finally, with regard to Listing 1.04C, while the medical records reflect moderate stenosis at C4-5 (R. 224), they do not clearly show an "inability to ambulate effectively."[4] 20 C.F.R. § 404, Subpart P, App. 1, 1.04C. Indeed, Claimant cites no evidence indicating an inability to ambulate and a January 2009 treatment record specifically noted that Claimant's gait continued to improve. (R. 44, 309).

Accordingly, the court finds that the ALJ's conclusion that Claimant's degenerative disc disease did not meet or equal Listing 1.04 is supported by substantial evidence in the record and that

---

[4] "Inability to ambulate effectively means an extreme limitation of the ability to walk" and "is defined generally as having insufficient lower extremity functioning [] to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. § 404, Subpart P, App. 1, 1.00B.2.b(1). "[E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." *Id.* at 1.00B.2.b(2)

19

the ALJ's analysis was sufficient and not erroneous.

**IV. The ALJ's RFC is supported by substantial evidence.**

Finally, Claimant contends that the ALJ failed to assess his RFC in accordance with Social Security Ruling 96-8p. Pl.'s Mem. at 28. In particular, Claimant contends his depression and anxiety were not considered in the ALJ's determination of Claimant's RFC[5] and that the ALJ failed to "discuss what specific limitations would be caused" by Claimant's DDD of the lumbar spine, disc protrusion of the lumbar spine, lower back pain and possible carpal tunnel syndrome.

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *5, 1996 WL 374184, at *1. The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *6, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other

---

[5] Claimant contends further that the ALJ's RFC analysis ignored Claimant's "below average intellectual functioning." Pl.'s Mem. at 29. However, as explained previously, there is no evidence suggesting this impairment impacts Claimant's work-related abilities and Claimant's cites to none.

20

evidence." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *21, 1996 WL 374184, at *7.

Claimant's argument regarding the ALJ's alleged failure to consider the cumulative effects of his impairments merits little discussion, as "[s]ufficient consideration of the combined effects of a [claimant's] impairments is shown when *each is separately discussed in the ALJ's decision*, including discussion of a [claimant's] complaints of pain and level of daily activities." *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (emphasis added) (citations omitted), *aff'd* 179 Fed. Appx. 167 (4th Cir. 2006) (unpublished per curiam). Here, the ALJ acknowledged Claimant's complaints of lower back, shoulder, neck and right arm pain, right hand numbness and tingling, depression and anxiety and sleep difficulties. (R. 40-45).

Furthermore, the ALJ's decision clearly indicates she considered Claimant's depression and in particular, the records from the Caring Family Network dated 27 April 2007 through 13 February 2008. (R. 40, 44, 251-61). Claimant faults the ALJ for failing to discuss Claimant's Global Assessment of Functioning ("GAF") scores, which ranged from 45 to 54.[6] Pl.'s Mem. at 27. However, the ALJ is not required to discuss all evidence in the record. *See, e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility determination); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written

---

[6] The GAF scale ranges from zero to one-hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV"), 32 (4th ed. 1994). A GAF score between 41 and 50 indicates "[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning . . . ." DSM-IV at 32 (bold typeface omitted). A GAF score between 51 and 60 indicates "[m]oderate symptoms [or] moderate difficulty in social, occupational, or school functioning." *Id.*

21

evaluation of every piece of testimony and submitted evidence is not required"). Indeed, "[t]o require an ALJ to refer to every physical observation recorded regarding a Social Security claimant in evaluating that claimant's . . . alleged condition[s] would create an impracticable standard for agency review, and one out of keeping with the law of this circuit." *White v. Astrue*, No. 2:08-CV-20-FL, 2009 U.S. Dist. LEXIS 60309, at *11-12, 2009 WL 2135081, at *4 (E.D.N.C. July 15, 2009). Rather, the ALJ must "provide [this Court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517.

Here, the ALJ's summary of Claimant's medical record "enable[s] . . . [this court] to conclude that [the ALJ] considered [his] medical condition as a whole." *See Dyer*, 395 F.3d at 1211. As explained earlier, the ALJ acknowledged Claimant's treatment records from the Caring Family Network which indicated that Claimant was doing well overall. (R. 40, 254-57). Furthermore, the last mental health treatment record, dated 13 February 2008, indicated Claimant was in high spirits and all his psychiatric markers were within normal limits. (R. 40, 251). Claimant cites to no treatment records supporting a functional limitation beyond that found by the ALJ – that is, a limitation to simple work in a low production environment.

Finally, with respect to Claimant's argument regarding his DDD of the lumbar spine, disc protrusion of the lumbar spine, lower back pain and possible carpal tunnel syndrome, the court observes Claimant has pointed to no evidence during the relevant time period suggesting limitations beyond that found by the ALJ. While the ALJ has a duty to evaluate the intensity and persistence of a claimant's symptoms, *see* 20 C.F.R. §§ 404.1529(c), 416.929(c), that duty does not extend to speculating as to the impact of those symptoms on a claimant's ability to work. Rather, the claimant

22

has the burden of furnishing evidence supporting the existence of a condition and the effect of that condition on his ability to work on a sustained basis. *See* 20 C.F.R. §§404.1512(c), 416.912(c) and 20 C.F.R.§§ 404.1545(a)(3), 416.945(a)(3); *see also Pass*, 65 F.3d at 1203. Yet, Claimant has failed to do more than suggest that the ALJ should have speculated as to what extent Claimant's alleged lumbar impairment, low back pain and possible carpal tunnel syndrome may have impaired his ability to work.

The ALJ's RFC discussion spans four single-spaced pages, is replete with citations to the record and carefully analyzes Claimant's work-related abilities. Moreover, while a state agency consultant found Claimant had the RFC to perform medium work, the ALJ, giving Claimant "the maximum benefit of the doubt," found Claimant capable of light work only. (R. 45, 175-82). Accordingly, the court finds that substantial evidence supports the RFC assessment made by the ALJ and that the correct legal standards were applied.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-30] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-36] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

23

This, the 3rd day of November, 2011.

Robert B. Jones, Jr.
United States Magistrate Judge